IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **OLUSEYI OGUNBEKEN,** | : | |
| Petitioner, | : | Civil Action No. 1:09-CV-00368 |
| v. | : | (Chief Judge Kane) |
| **MARY SABOL**, in her official capacity as Warden of the York County Prison, York, Pennsylvania; **THOMAS R. DECKER**, in his official capacity as Philadelphia Field Office Director for Detention and Removal, U.S. Department of Homeland Security, Immigration and Customs Enforcement; and **ERIC HOLDER**, in his official capacity as Attorney General of the United States, | : | (Magistrate Judge Smyser) |
| Respondents. | : | |

## **MEMORANDUM**

Before the Court are Petitioner Oluseyi Ogunbeken's petition for a writ of habeas corpus and complaint for declaratory and injunctive relief (Doc. No. 1), Magistrate Judge Smyser's Report and Recommendation (Doc. No. 11), and Petitioner's objections to the Report and Recommendation (Doc. No. 12).[1] Petitioner claims that the mandatory detention provision found at § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), does not apply to him and he is seeking an individualized bond hearing. Petitioner also claims that if the mandatory detention provision of 8 U.S.C. § 1226(c) applies to him, the provision violates his

---

[1] Petitioner did not timely file objections to the Report and Recommendation within the 10 days required by Federal Rule of Civil Procedure 72(b). However, in a letter dated September 14, 2009, the Petitioner's attorney asked that this Court reject the Report and Recommendation and order that the Petitioner be given an individualized hearing. In the interest of justice, the Court will construe this letter as the Petitioner's objections pursuant to FRCP 72(b).

substantive and procedural due process rights. In the Report and Recommendation, Judge Smyser recommended (1) that Thomas R. Decker and Attorney General Eric Holder be dismissed as respondents and (2) that the petition be denied and that the case file be closed. For the reasons that follow, the Court will adopt Judge Smyser's Report and Recommendation in part and reject it in part.

Because the Court holds that the mandatory detention provision does not apply to petitioner, the habeas petition will be granted insofar as the matter will be remanded to Immigration Control and Enforcement ("ICE") to conduct an individualized bond hearing. The Court declines to adopt that portion of the Report and Recommendation that recommends that such relief be denied. However, the portion of the Report that recommended dismissing Thomas Decker and Eric Holder as improper respondents will be adopted. The Court will not reach Petitioner's arguments concerning the constitutionality of the mandatory detention statute.

**I. BACKGROUND**

The factual background of this case is not in dispute and is set forth in Judge Smyser's Report and Recommendation. (Doc. No. 11.) Petitioner is a native and citizen of Nigeria, and became a lawful permanent resident of the United States on October 31, 1991. (Id. at 3.) On April 16, 1993, Petitioner was convicted in the United States District Court for the Eastern District of New York for the sale of counterfeit securities in violation of 18 U.S.C. § 513. (Id.) He was sentenced to twelve months imprisonment and three years of supervised release. (Id.) He was released from custody in May 1994. (Id.)

On June 23, 2008, Petitioner was arrested in Delaware County, Pennsylvania, and convicted of driving under the influence of alcohol or a controlled substance. (Id.) He was sentenced to a term of 3 to 23 months imprisonment. (Id.)

On January 26, 2009, following his release for driving under the influence, Petitioner was taken into ICE custody and served with a Notice to Appear. (Id. at 4.) The Notice to Appear, dated December 13, 2008, charged Petitioner with being subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony and 8 U.S.C. § 1227(a)(2)(A)(i) because, within five years after his admission into the United States, he had been convicted of a crime involving moral turpitude for which a sentence of one year or longer may be imposed. (Id.) Both charges are based on Petitioner's 1993 conviction. (Id.)

On January 26, 2009, Petitioner requested a redetermination of his custody by an immigration judge. (Id.) By an order dated February 19, 2009, an immigration judge denied Petitioner's request. (Id.) On February 26, 2009, Petitioner filed a petition for a writ of habeas corpus and complaint for declaratory and injunctive relief with this Court. (Doc. No. 1.) Judge Smyser issued his Report and Recommendation on April 8, 2009. The Court received Petitioner's objections on September 14, 2009.

## II. STANDARD OF REVIEW

When a party objects to a report and recommendation of a magistrate judge, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). The Court may also "accept, reject, or modify, in whole or in part, the findings or recommendations made by the

3

magistrate judge." Id.

## III. DISCUSSION

Petitioner is being detained by ICE pursuant to the mandatory detention provision contained in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). The mandatory detention provision, 8 U.S.C. § 1226(c), states in pertinent part:

> (c) Detention of criminal aliens. (1) Custody. The Attorney General shall take into custody any alien who –
> . . .
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 237(a)(2)(A)(I) [8 U.S.C. § 1227(a)(2)(A)(i)] on the basis of an offense for which the alien has been sentence [sentenced] to a term of imprisonment of at least 1 year . . .
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Congress enacted the IIRIRA on September 30, 1996. However, the mandatory detention provision was deferred for two years until October 9, 1998, during which time the "Transition Period Custody Rules" ("TPCR") were in effect. Id. The TPCR "provided for bond hearings for some aliens removable for having committed certain crimes and gave the Immigration Court discretion to set bond if a lawfully admitted alien did not present a danger to persons or property and was likely to appear at future removal proceedings." Id.

In his objections, Petitioner argues that Judge Smyser improperly gave deference to the BIA's legal interpretation of 18 U.S.C. § 1226(c), instead of relying on prior precedent announced by this Court and other district courts. However, as Judge Smyser notes in his report, this Court has not yet addressed whether the BIA's interpretation in Matter of Saysana, 24 I. & N. Dec. 602 (BIA 2008), is entitled to deference. (Doc. 11, at 11.)

The Supreme Court has made clear that "[c]onsistent with the rule in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-843 (1984), the BIA is entitled to deference in interpreting ambiguous provisions of the INA." Negusie v. Holder, __ U.S. __, 129 S.Ct. 1159, 1163 (2009). "Congress has charged the Attorney General with administering the INA, and a 'ruling by the Attorney General with respect to all questions of law shall be controlling.'" Id. (quoting U.S.C. § 1103(a)(1)). The Attorney General has delegated to the BIA the discretion and authority conferred upon the Attorney General by law to consider and determine the cases that come before it. Id. at 1164.

In the present case, Judge Smyser correctly determined that the BIA's interpretation of the IIRIRA is entitled to Chevron deference and is therefore controlling. Therefore, Judge Smyser was correct to find that § 1226(c) does not require that the release from custody be tied to the offense that forms the basis of the removal charges. In Saysana, the BIA found that the "when released" language of 8 U.S.C. § 1226(c) was "not expressly tied to any other language that would clarify whether it refers to release from criminal custody, DHS custody, or some other form of detention." 24 I. & N. Dec. 602, 604. The BIA held that the language of § 1226(c) did not limit the non-DHS custodial setting to criminal custody tied to the basis for detention under that section. Id. at 607. This holding is in line with this Court's previous application allowing the "when released" language to apply in cases where an alien is released for a non-removable offense. See, e.g., Thomas v. Hogan, No. 08-CV-0417, 2008 WL 4793739, at *5 (M.D. Pa. Oct. 31, 2008) (Kane, C.J.) (finding petitioner was subject to the TPCR for his 1997 conviction for a removable offense where the petitioner had been released in 2005 following a separate assault arrest).

While the Report and Recommendation correctly points out the need to give deference to the Saysana opinion, it fails to address the dispositive issue in the case: Whether the mandatory detention provision, which was adopted in 1996, has retroactive application to Petitioner's 1993 conviction.

In Saysana, the BIA did not reach the issue of whether the mandatory detention provision could be applied retroactively to include offenses that occurred before the IIRIRA became effective. Although the prior conviction involved in that case occurred in 1990, the BIA never addressed the retroactivity issue. It is unclear whether the issue was ever raised by the parties or addressed by the BIA. Therefore, it has little precedential value in this case. See, e.g., Parker v. Kelchner, 429 F.3d 58, 63 (3d Cir. 2005) (distinguishing a Third Circuit concurring opinion and a Supreme Court decision because they did not address the applicable question); see also Brecht v. Abrahamson, 507 U.S. 619, 631 (1993) (declining to follow prior cases where the issue at hand had not been "squarely addressed").

The Supreme Court has set forth a framework to determine whether a statute has retroactive application:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

Landgraf v. USI Film Prods., 511 U.S. 244, 280 (1994). Therefore, the first step in analyzing the retroactivity of § 1226(c) is whether Congress has expressly prescribed the statute's proper

reach. In this case, Congress has done so. By explicitly providing that § 1226(c) "shall apply to individuals released after" the one to two year test period of the TPCR, Congress expressly proscribed that the permanent mandatory detention provisions were to be applied to aliens who were released *after* the transitional rules applied. See Pub.L. 104-208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009-586; Velasquez v. Reno, 37 F. Supp. 2d 663, 670-71 (D.N.J.1999).

Even if the express language of § 1226(c) was ambiguous, the statute's effect requires it to be applied prospectively since retroactive application would "increase a party's liability for past conduct." Landgraf, 511 U.S. at 280. In this case, Petitioner is subject to detainment without a hearing for the criminal act of selling counterfeit securities that he committed in 1993. Yet the mandatory detention provision, § 1226(c), was not put into effect until after the TPCR provisions were terminated on October 9, 1998. Thus, a retroactive reading of the statute increases Petitioner's liability for conduct that occurred several years before the statute's enactment. See also Cox v. Monica, No. 07-CV-0534, 2007 WL 1804335, at *4-5 (M.D. Pa. June 20, 2007) (Conner, J.) (concluding the mandatory detention provision "does not retroactively apply to aliens who were released from custody prior to its effective date because the provision clearly attaches new legal consequences to actions taken before its enactment").

Although the Court has been unable to find any United States Court of Appeals precedent that has undertaken a review of the retroactivity of the mandatory detention provision, other District Courts that have addressed the issue have concluded that § 1226(c) is to be applied prospectively. See, e.g., Mitchell v. Orsino, No. 09-Civ-70292009, WL 2474709, at *3 (S.D.N.Y. Aug. 13, 2009) (noting that "every District Court which has considered this issue has

7

concluded that the mandatory detention provision cannot be retroactively applied to aliens who were released from custody for removable offenses prior to October 9, 1998 – even if they are later released from custody for a nonremovable offense")(quotation omitted); Garcia v. Shanahan, 615 F. Supp. 2d 175, 182 (S.D.N.Y. 2009) (finding detention provision cannot be applied retroactively); Hy v. Gillen, 588 F. Supp. 2d 122, 126 (D. Mass. 2008) (noting Government conceded that § 1226(c) did not have retroactive effect); Ijemba v. Attorney General, No. 2:07-CV-1091, 2007 WL 2908820 (W.D. La. Sept. 4, 2007) (finding Congress expressly provided that § 1226(c) is to be applied prospectively); Cox, 2007 WL 1804335, at *4-5; Velasquez v. Reno, 37 F. Supp. 2d at 670-71.

The Court holds that the mandatory detention provision of the IIRIRA applies prospectively to acts that occurred following the termination of the TPCR on October 9, 1998. Therefore, Petitioner is not subject to the IIRIRA's mandatory detention provision by virtue of his 1993 conviction.

**IV.	CONCLUSION**

For the foregoing reasons, the Court will decline to adopt the portion of Judge Smyser's Report and Recommendation that recommended denying Petitioner's habeas petition. Petitioner's habeas petition will be granted insofar as it remands the case for an individualized bond hearing. The portion of the Report that recommended dismissing Thomas Decker and Eric Holder will be adopted. The Court does not reach Petitioner's due process rights claims. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| OLUSEYI OGUNBEKEN | : | |
|---|---|---|
| | : | |
| Petitioner | : | Civil Action No. 1:09-CV-00368 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| MARY SABOL, in her official capacity as Warden of the York County Prison, York, Pennsylvania; THOMAS R. DECKER, in his official capacity as Philadelphia Field Office Director for Detention and Removal, U.S. Department of Homeland Security, Immigration and Customs Enforcement; and ERIC HOLDER, in his official capacity as Attorney General of the United States, | : | (Magistrate Judge Smyser) |
| | : | |
| Respondents | : | |

**ORDER**

**AND NOW**, this 6th day of October, 2009, upon consideration of the petition for writ of habeas corpus (Doc. No. 1), and for the reasons set forth in the memorandum filed herewith, it is hereby **ORDERED** that:

1. The petition for writ of habeas corpus (Doc No. 1) is **GRANTED** inasmuch as the matter is **REMANDED** to the United States Immigration and Customs Enforcement ("ICE") for an immigration judge to conduct an individualized bond hearing within fifteen days of the date of this order.

2. Thomas R. Decker and Eric Holder are **DISMISSED** as respondents.

3. Respondents shall **NOTIFY** the Court of the status of the matter within twenty days.

4. The Clerk of Court is directed to **CLOSE** this case.

9

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania